## 38743. WHITE v. LEGODAIS.

GREGORY, Justice.

This is an appeal from the issuance of a permanent injunction which prevents appellant from placing a dwelling which he describes as a "modular home" on his property in the Indian Bend Subdivision because of covenants and restrictions against "mobile homes" in that subdivision. Because we believe that the trial judge did not abuse his discretion in issuing the injunction, we affirm.

1. The first question is whether the restrictive covenant at issue here is too vague and indefinite to be enforced. The trial court found that the covenant was sufficiently specific to be enforced, and we agree.

Section A-8 of the subdivision's restrictions reads as follows: "No mobile home or structure of a temporary character, trailer, basement, tent, shack, barn, or garage, or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently."

Appellant argues that this language is too vague and indefinite to be enforced, based on our case of the *City of Woodstock v. Boddy*, 240 Ga. 477 (241 SE2d 236) (1978). In that case, we affirmed the trial court's ruling that the definition of "mobile home" in a new comprehensive zoning ordinance was vague, indefinite, uncertain and unenforceable. The ordinance at issue defined a mobile home simply as a "vehicle or portable structure used for dwelling or sleeping purposes." This included definition rendered the ordinance too vague and indefinite to be enforceable.

Here we are dealing with a restrictive covenant for a subdivision, a private agreement between contracting parties as opposed to the city ordinance in *City of Woodstock.* It uses the term "mobile home" but does not attempt to define it. We will not strike this restrictive covenant as being too vague and indefinite simply because the phrase "mobile home" is not therein defined. Instead, we will examine those words in light of our rules regarding construction of covenants to determine if any meaning can be attached to them.

"Covenants are to be so construed as to carry into effect the intention of the parties, which is to be collected from the whole instrument, and the circumstances surrounding its execution." *Dooley v. Savannah Bank &c. Co.,* 199 Ga. 353, 357 (34 SE2d 522) (1945); *Atlanta, K. &c. R. Co. v. McKinney,* 124 Ga. 929 (3) (53 SE 701) (1905). When the subdivider's intent in drafting a restriction on the use of property conveyed clearly appears, such intent will be followed. *Bales v. Duncan,* 231 Ga. 813 (204 SE2d 104) (1974); *Reid v. Standard Oil Co.,* 107 Ga. App. 497 (130 SE2d 777) (1963).

The instrument and the circumstances in this case show what the developer who drafted the restrictive covenants intended the words "mobile home" to mean. The trial judge was authorized to find that the developer used the words "mobile home" in their common everyday sense and specifically intended to include those dwellings which are frequently referred to as "double-wide trailers." In the context of this restrictive covenant, the words "mobile home" are not so vague or indefinite as to render the covenant unenforceable.

2. Next, we must consider whether the trial court erred in holding that appellant's dwelling was a mobile home rather than a "modular home." This determination involved both questions of law and fact and can only be overturned in the event of manifest abuse of discretion. *Lawrence v. Harding,* 225 Ga. 148 (2) (166 SE2d 336) (1969). We find no such abuse here.

The dwelling at issue here was a Darlington Debonair Model 302, purchased from American Discount Mobile Homes, Inc. The purchase agreement between White and American Discount, the manufacturer's Warranty and Owner's Manual, and the accompanying certificate of compliance with the National Mobile Home Construction and Safety Standards Act of 1974 all consistently refer to the dwelling as a mobile home.

Testimony at trial showed that the words "mobile home" as used in the restrictive covenant were intended in their ordinary everyday meaning. Code Ann. § 84-4802 (A) and the Rules of Georgia Department of Transportation define mobile home as follows: " 'Mobile home' means a movable or portable dwelling over 32 feet in length and over eight feet wide, constructed to be towed on its own chassis, connected to utilities and designed without a permanent foundation for year-round occupancy, which can consist of one or more components that can be retracted for towing purposes and subsequently expanded for additional capacity, or of two or more units separately towable but designed to be joined into one integral unit." The evidence presented at trial authorized the trial court to find that White's dwelling was a mobile home under this definition.

We also note that this dwelling fits the definition of mobile home used in other jurisdictions. See Robinson Township v. Knoll, 410 Mich. 293 (302 NW2d 146) (1981);[1] Heath v. Parker, 93 N. M. 680 (604 P2d 818) (1980).[2] Finally, the trial judge was presented with evidence

---

[1] In this case, a zoning ordinance restricting the placement of mobile homes was struck down on constitutional grounds not presented here.

[2] A restrictive covenant against placing a "trailer" in a subdivision was found not to apply to "mobile homes."

that White's particular dwelling was exactly the type mobile home this restrictive covenant was intended to exclude.

White argues, however, that his dwelling is a modular home rather than a mobile home because it meets the Troup County zoning ordinance's definition of modular home, and a permit was issued by the Troup County Building Inspector referring to the dwelling as a modular home. We do not find this to be persuasive because a subdivision may impose greater restrictions on the use of land by its covenants than are imposed by the general county code. In this case, the county's definition of modular home was drawn up several years after the restrictive covenant at issue here, and it did not change what was intended to be restricted by that covenant.

The trial judge did not abuse his discretion by holding that appellant's dwelling was a mobile home rather than a modular home and by issuing the injunction.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 1982.

*Mattox & Baldwin, A. Quillian Baldwin, Jr.,* for appellant. *H. J. Thomas, Jr.,* for appellee.