A07A1965. ROBERTS v. LEE et al.
(658 SE2d 258)

MILLER, Judge.
Gary D. Lee and Sheryl D. Lee sued their neighbor Frederick L. Roberts to enjoin Roberts from using his residence for commercial purposes in violation of the restrictive covenants applicable to their residential subdivision. Following an evidentiary hearing, the trial court issued a permanent injunction against Roberts. Roberts appeals, and we affirm.

"The construction, interpretation and legal effect of [a restrictive covenant] is an issue of law to which the appellate court applies the plain legal error standard of review." (Punctuation and footnote omitted.) *Crawford v. Dammann,* 277 Ga. App. 442, 444 (1) (626 SE2d 632) (2006). Whether Roberts violated the restrictions on the use of his property as contained in the restrictive covenants "involved both questions of law and fact and can only be overturned in the event of manifest abuse of discretion." (Citation omitted.) *White v. Legodais,* 249 Ga. 849, 850 (2) (295 SE2d 99) (1982). See *Sissel v. Smith,* 242 Ga. 595, 597 (3) (250 SE2d 463) (1978) ("whether . . . restrictive covenant prevents the incidental use of a portion of a residence for business or trade purposes is a question of fact depending upon the facts and circumstances of a given case").

The evidence before the trial court showed that the Lees and Roberts were homeowners in the Mallard Lake Subdivision in Carroll County. The subdivision property is subject to the Declaration of Protective Covenants Applicable to Mallard Lake (the "Covenants"). The Covenants provide, among other things, that the subject property "is intended and shall be used for residential purposes only. All commercial and business activities are prohibited." In addition, "[n]o lot shall be used except for residential purposes."

Roberts is in the business of transporting asphalt and other building materials to road resurfacing sites. For this purpose, he owns a 2006 Mack Granite dump truck. Roberts parks the dump truck in the circular driveway in front of his home. Roberts conceded

that it was a "big, big truck" and that it was so wide that no car could get past it if it was parked on the street.

Mrs. Lee testified that Roberts cranked the dump truck between 4:00 and 5:00 each morning and allowed it to run for 15 to 20 minutes before driving it to work. Although Roberts claimed that he never backed the dump truck out of the driveway, Mrs. Lee testified that as Roberts would back the dump truck out of the driveway, the backup alarm would emit a loud beeping sound. According to Roberts, he parked the car in his driveway because he was concerned that it might be stolen if it was parked elsewhere. Roberts also claimed that having the dump truck parked at his home enabled him to comply with government regulations that limit the amount of time he is able to use the truck each day. Before the hearing on the Lees' complaint, Roberts leased a nonresidential site for parking the dump truck, but testified that he intended to continue to park it in his driveway overnight on consecutive work days.

In addition to the dump truck, Roberts also owned a box van that he used to carry cones and barrels that might be needed on a job site and a pickup truck with a water tank attached to the bed of the truck. Roberts parked these vehicles in his driveway and on the street in front of his home. Roberts' son, who worked with his father but did not reside at the home, also parked work-related vehicles in Roberts' driveway and on the street in front of Roberts' home. Mrs. Lee testified that there were generally five to six vehicles parked in front of the Roberts' home each night. In addition, Roberts and his son washed and changed the oil on the dump truck and other work vehicles from time to time while they were parked at the residence.

The trial court concluded that Roberts was using or permitting his property to be used for business purposes contrary to the Covenants' prohibition against nonresidential use, and that the Lees had no adequate remedy at law. The trial court ordered that Roberts be permanently enjoined from (i) parking his business vehicles on or near his subdivision property; (ii) performing maintenance or repair activities on his business vehicles on or near his subdivision property; and (iii) permitting a third party to do any of the acts prohibited by the order.

1. Roberts claims that the trial court erred in construing the Covenants to prohibit him from parking or maintaining commercial vehicles in his driveway. The Covenants do not specifically prohibit parking of commercial vehicles within the subdivision, and Roberts argues that the trial court did not properly apply the rules of contract construction to infer such a restriction, especially in light of the rule

that "any doubt concerning restrictions on use of land will be construed in favor of the grantee." (Citations and punctuation omitted.) *Licker v. Harkleroad*, 252 Ga. App. 872, 874 (2) (a) (558 SE2d 31) (2001). We disagree.

Here, the trial court concluded that Roberts was using or permitting his property to be used for business purposes contrary to the unambiguous provisions of the Covenants, which provided that the property shall be used for residential purposes only. In making this determination, the trial court properly considered the intent underlying the Covenants, as reflected by the instrument as a whole. "It is the duty of the trial court to construe a covenant to carry into effect the intention of the parties, which is to be discerned from the whole instrument." (Citation omitted.) *Garland v. Carnes*, 259 Ga. 263 (379 SE2d 782) (1989); see *Licker*, supra, 252 Ga. App. at 874 (2) (rule of strict construction "does not override the rule that the entire document must be considered when determining the intention of the parties"). The express intent of the Covenants is to improve the status of the lots, protect the value of the real estate, ensure uniformity of use and stability of character, and to preserve the residential characteristics of the property.

In *Parker v. Peaceful Valley Property Owners Assn.*, 271 Ga. 325, 326 (1) (519 SE2d 440) (1999), the Supreme Court of Georgia considered a restrictive covenant that required all property in a subdivision "be used exclusively for residential purposes" and that limited each lot "to one single family dwelling house and one building for a garage." Id. In that case, the owners proposed constructing a garage to store, when not otherwise in use, a dump truck, pickup truck, and other equipment used in an owner's business. Id. The Supreme Court held that storing the dump truck and other vehicles was a "business purpose" prohibited by the restrictive covenants. ("Because they intended to use their storage building for business purposes, we conclude that it violated the association's restrictive covenant that the property be used exclusively for residential purposes.") Id.

In this case, Roberts was using his residential property to advance his business interests by consistently parking a dump truck and other commercial-use vehicles in his driveway. This finding was supported by photographic evidence demonstrating that Roberts' activities directly undermined the residential character of the property intended to be preserved by the Covenants. As a result, the trial court did not abuse its discretion in finding that such use was nonresidential and prohibited by the Covenants.

2. Roberts also argues that even if he engaged in activities prohibited by the Covenants, the Lees lacked the "clean hands" necessary to enforce the Covenants because Mrs. Lee was also engaged in similarly prohibited activities. "He who would have equity

must do equity." OCGA § 23-1-10. See, e.g., *Daubresse v. Smithey*, 231 Ga. 725 (204 SE2d 133) (1974) (affirming trial court's decision to refuse to issue an injunction against either party because both violated the terms of a noncompetition agreement).

Here, the evidence showed that Mrs. Lee was a court reporter, and that she typed transcripts on her home computer and received business mail at her residence, but personally delivered her work product to the courthouse, and that her activities did not increase traffic in the subdivision.

The trial court concluded that Mrs. Lee was not in violation of the Covenants, and we agree. Mrs. Lee was not using her property inconsistently with the stated purposes of the Covenants, and her actions related to typing transcripts on her home computer had no effect on the value, status, stability, and residential character of her home or the subdivision. The Covenants were not reasonably intended to prohibit Mrs. Lee's activities, and she does not lack the "clean hands" necessary to enforce the Covenants. "[T]he goal of contract construction is to carry out the intent of the parties." (Footnote omitted.) *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. 326, 327 (1) (623 SE2d 511) (2005).

3. Finally, Roberts argues that the trial court erred in broadly enjoining him from parking his business vehicles on or near his property and from permitting third parties from doing "any of the acts prohibited by this order." We disagree.

"[A] trial court has broad discretion to fashion equitable remedies based upon the exigencies of each case, and . . . a trial court should craft an injunction in a manner that is the least oppressive to the defendant while still protecting the valuable rights of the plaintiff." (Punctuation and footnotes omitted.) *Goode v. Mountain Lake Investments*, 271 Ga. 722, 724 (2) (524 SE2d 229) (1999). Here, the trial court's ruling was crafted to conform with the evidence of Roberts' particular violation of the Covenants. We disagree with Roberts' arguments to the contrary, including his assertion that the order prevents third parties, such as delivery persons or service technicians, from parking their vehicles on the property, and prevents his son from dropping by the house for dinner if he happened to be driving a pickup truck.

The order restricts activities related only to "[Roberts'] business vehicles," and when logically construed, applies only to vehicles primarily employed in *his* business. As a result, the order does not prevent delivery persons, service technicians, or other third parties from parking vehicles used in *other* businesses at the residence, nor does it prevent Roberts' son from parking a pickup truck at the residence provided that the pickup truck is not primarily employed in Roberts' business. We find no abuse of discretion.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED FEBRUARY 22, 2008.

*Daniel B. Greenfield*, for appellant.
Gary D. Lee, *pro se.*
Sheryl D. Lee, *pro se.*